UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TOMMY D. WILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 2:22-cv-1149-ACA** |
| ) | |
| **BIRMINGHAM WATER** ) | |
| **WORKS BOARD,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Tommy D. Williams worked for Defendant Birmingham Water Works Board as a utility worker. Due to his degenerative disc disease, Mr. Williams found that job physically demanding and self-demoted to a less physically demanding position. The Board then promoted Mr. Williams to a dump truck driver position. As part of the promotion, the Board reassigned Mr. Williams to a new department where he reported to Milton Carpenter.

Almost immediately, problems developed. Mr. Carpenter told Mr. Williams that he did not want Mr. Williams in his department. Mr. Carpenter directed Mr. Williams to perform manual labor that aggravated his back, and when Mr. Williams filed a complaint about his treatment, members of his department "recruited" employees to file complaints about Mr. Williams to get back at him.

The Board investigated Mr. Williams's complaint against Mr. Carpenter and the coworkers' complaints against Mr. Williams. The Board issued a verbal warning to Mr. Carpenter and placed Mr. Williams on administrative leave "for making threats toward other employees." Although Mr. Williams vehemently disputes making these threats, the Board ultimately terminated Mr. Williams for them. Mr. Williams then filed suit, alleging that the Board discriminated against him because of his disability (Count One) and retaliated against him for making his internal complaint (Count Two) in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*. (Doc. 1). The Board has moved for summary judgment as to both claims. (Doc. 24).

The court **WILL GRANT** the Board's motion and **WILL ENTER SUMMARY JUDGMENT** in its favor as to both claims. Regarding Count One, even assuming Mr. Williams can establish a prima facie case of discrimination, he has failed to identify a triable issue of fact regarding pretext. And for Count Two, Mr. Williams has failed to identity a triable issue of fact on causation, an essential element of his prima facie case of retaliation.

I.   BACKGROUND

When approaching a motion for summary judgment, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-

moving party, and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the nonmovant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

Mr. Williams began his employment with the Board as a utility worker. (Doc. 43-14 at 9). But after about a year in that position, Mr. Williams told his supervisor he was having back pain and requested a demotion to being a dump truck helper. (Doc. 43-3 at 1; doc. 43-6; doc. 43-14 at 17, 21). About a year later, the Board promoted Mr. Williams to a dump truck driver position with Mr. Carpenter as his new manager. (Doc. 43-14 at 19–20; *see also* doc. 43-6).

Problems developed immediately. (*See, e.g.*, doc. 43-14 at 16, 23). On Mr. Williams's first day, Mr. Carpenter told Mr. Williams "that he didn't want [Mr. Williams] in his department" and assigned him equipment used by utility workers. (*Id.* at 23). Mr. Williams testified that Mr. Carpenter and members of his department made him feel like they did not respect his decision to take the initial

voluntary demotion "because [he] had health problems." (*Id*. at 16; *see also id*. at 42).

Mr. Carpenter also "continuously" tried to have Mr. Williams perform utility worker duties. (Doc. 43-14 at 23). Mr. Williams refused to do so, telling Mr. Carpenter that he had "back problems." (*Id*.). Mr. Carpenter directed Mr. Williams to produce supporting paperwork of his back problems. (*Id*.). Mr. Williams provided Mr. Carpenter with medical documentation which demonstrated Mr. Williams's history of back problems. (*Id*. at 25–26).

In August 2020, Mr. Williams verbally complained to a member of the human resources department about his treatment and filed a written complaint. (*See* doc. 43-14 at 29–30; *see also* doc. 43-6). In the written complaint, Mr. Williams states that Mr. Carpenter and others were harassing and bullying him "due to [his] decision to self demote" even though Mr. Williams "made the decision to take the lesser position for the benefit of [his] personal health." (Doc. 43-6). As an example of this harassment and bullying, Mr. Williams stated that Mr. Carpenter assigned him to work on a leak truck to do a utility worker's work. (*See id*.). Mr. Williams testified that when he made this written complaint, he told a human resources representative about his back problems and accompanying physical limitations. (Doc. 43-14 at 31).

The Board investigated Mr. Williams's complaint and issued a verbal warning to Mr. Carpenter for his conduct. (Doc. 43-7). Although the Board disciplined

Mr. Carpenter in September 2020 (*see id.*), the Board did not notify Mr. Williams of that decision until December 18, 2020 (*see* doc. 43-8). And that same day (December 18), the Board notified Mr. Williams that he was "being placed on administrative leave effective" immediately "for making threats toward other employees." (Doc. 43-9).

According to Mr. Williams's coworkers, Mr. Williams threatened his coworkers with physical violence, called his coworkers racial slurs, and used other vulgarity at the workplace. (*See* docs. 43-22 to 43-25; *see also* doc. 43-15 at 14; doc. 43-16 at 18–24; doc. 43-17 at 8–9). These coworkers reported these comments to various members of the Board's human resources department. (*See*, *e.g.*, doc. 43-19 at 37–39). And those employees collected these complaints and gave them to Matthew Pritchett, the Board's distribution manager. (*See*, *e.g.*, doc. 43-19 at 38; doc. 43-10 (indicating Mr. Pritchett's title)).

Mr. Williams contends that the reported threats were "all made up." (Doc. 43-14 at 39; *see also id.* at 41, 43, 45–46). According to Mr. Williams, a coworker in his Department "recruited a lot of people" to go into Mr. Carpenter's office and complain about him. (*Id.* at 48). And the reason his coworkers made these statements was to get Mr. Williams "out of the department" because he made "a complaint about [Mr.] Carpenter" and could not do a utility worker's duties. (*Id.* at 46). In January 2021, the Board notified Mr. Williams that it had decided to terminate his

employment (doc. 43-10), and Mr. Williams's appeal of that decision was unsuccessful (doc. 43-11).

## II. DISCUSSION

Mr. Williams asserts that he was discriminated against and retaliated against in violation of the ADA and the Rehabilitation Act when the Board terminated his employment. (*See* doc. 12 ¶¶ 35–55). The Board moves for summary judgment as to all claims against it. (Doc. 24). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

For each claim, the Board and Mr. Williams discuss the sufficiency of Mr. Williams's circumstantial evidence under only the *McDonnell-Douglas* burden shifting framework. (*See* doc. 44 at 18, 31–32; doc. 45 at 34–35). Under that framework, Mr. Williams bears the initial burden of establishing his prima facie case. *See Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215–16, 1219 (11th Cir. 2021). "Once the employee sets forth a prima facie case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the employment decision." *Id*. at 1219. "And if the [Board] satisfies that requirement, the burden shifts back to [Mr. Williams] to show that the reasons the [Board] articulated are merely a pretext" for discrimination or retaliation. *Id*. at 1216, 1219.

6

1. Count One

In Count One, Mr. Williams alleges that the Board "terminated [him] based on his disability, history of a disability, and/or its perception of him as disabled." (Doc. 12 ¶ 40). Although the Board contends that Mr. Williams cannot carry his initial burden of establishing a prima facie case (doc. 44 at 19–27), the court need not decide that issue because even if Mr. Williams can carry that burden, he has failed to show that the Board's reason for its action was pretextual, *see Akridge v. Alfa Ins. Co.*, 93 F.4th 1181, 1195 (11th Cir. 2024) (declining to decide whether a plaintiff had established a prima facie case because the plaintiff's evidence "still fail[ed] to show that [her employer's] legitimate, non-discriminatory reasons for her termination were pretextual"). So the court's analysis proceeds directly to steps two and three of the *McDonnell-Douglas* burden shifting framework.

### a. *Legitimate, Nondiscriminatory Reasons*

"[A]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Id*. The Board contends that it placed Mr. Williams on administrative leave and ultimately terminated him for making threats toward other employees. (Doc. 44 at 27–29; *see also* docs. 43-9 to 43-11). Although Mr. Williams vehemently disputes making any threats (*see* doc. 43-16 at 39, 43, 45–46, 48), the Board has articulated a legitimate nondiscriminatory reason for his termination, *see*

*Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1319 (11th Cir. 2024) (observing that the burden on employers to identity a nondiscriminatory reason for its conduct "is exceedingly light") (quotation marks omitted).

### b. Pretext

Because the Board has carried its burden to identify a legitimate nondiscriminatory reason for its conduct, Mr. Williams must "show that the reason[] the [Board] articulated [is] merely a pretext for discrimination." *Todd*, 998 F.3d at 1216. An employee attempting to rebut an employer's legitimate, non-discriminatory reasons for an employment action "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc) (quotation marks omitted). "A reason is not pretext for [discrimination] unless it is shown both that the reason was false, and that [discrimination] was the real reason." *Id.* (cleaned up).

Mr. Williams testified that he did not threaten his coworkers. (*See* doc. 43-16 at 39, 43, 45–46, 48). But "the pretext inquiry centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Todd*, 998 F.3d at 1218 (quotation marks omitted). Mr. Williams has not presented evidence from which a reasonable jury could

8

conclude that Mr. Pritchett, the decisionmaker, did not believe that Mr. Williams threatened other employees and therefore cannot show that unlawful discrimination was the true reason for his termination.

Mr. Williams contends the investigation into these threats was shoddy and its timing was suspicious (*see* doc. 45 at 35–36), but "Title VII does not allow federal courts to second-guess nondiscriminatory business judgments, nor does it replace employers' notions about fair dealing in the workplace with that of judges," *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) (rejecting an argument based on an employee's contention that his employer conducted a "ham-handed investigation and . . . singl[ed] [the employee] out"). Accordingly, the court **WILL GRANT** the Board's motion and **WILL ENTER SUMMARY JUDGMENT** in its favor as to Count One.

2. Count Two

In Count Two, Mr. Williams contends that his termination was in retaliation for "making complaints of disability harassment and discrimination against" Mr. Carpenter. (Doc. 12 ¶ 46). "To establish a prima face case of retaliation, [Mr. Williams] must show (1) [he] participated in conduct that the statute protects; (2) [he] suffered an adverse employment action; and (3) the protected conduct and the adverse employment action are causally related." *Todd*, 998 F.3d at 1219. The Board challenges Mr. Williams's ability to establish the first and third elements. (*See*

doc. 44 at 33–35). Because the court agrees with the Board that Mr. Williams has not identified a triable issue of fact on causation, the court does not decide whether Mr. Williams participated in conduct that the statute protects. *See Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (holding that a district court "properly granted summary judgment on [the employee's] retaliation claim" where "there [was] no evidence to support causation").

The Board argues that Mr. Williams's complaint was not causally connected to his termination because more than five months elapsed between the complaint and Mr. Williams's termination. (Doc. 44 at 34). In response, Mr. Williams highlights that only three months elapsed between his complaint and his placement on administrative leave and that the Board notified him of the outcome from his internal complaint on the same date that the Board placed him on administrative leave. (Doc. 45 at 33–34).

Under controlling precedent, "mere temporal proximity, without more, must be very close" to establish the requisite causal connection. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quotation marks omitted). And "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Id*. Here, Mr. Williams complained about his treatment on August 28, 2020. (*See* doc. 43-6). He was placed on administrative leave on December 18, 2020 (doc. 43-9) and terminated in January

2021 (doc. 43-10). The temporal proximality between Mr. Williams's complaint and the adverse employment actions is not close enough, standing alone, to establish causation. *See Thomas*, 506 F.3d at 1364.

Mr. Williams tries to get around this precedent by highlighting the suspect nature of the investigation into his coworker's false complaints about him. (*See* doc. 45 at 36). But as described above, Mr. Williams has not identified any evidence from which a reasonable jury could find that the relevant decisionmaker, *i.e.*, Mr. Pritchett, had any knowledge that his coworker's complaints were false, participated in the fabrication of these statements, or was otherwise motivated to retaliate against Mr. Williams for his internal complaint. *See Todd*, 998 F.3d at 1219; *Frazier-White*, 818 F.3d at 1258. Accordingly, the court **WILL GRANT** the Board's motion and **WILL ENTER SUMMARY JUDGMENT** in its favor as to Count Two.

### III.  CONCLUSION

The court **WILL GRANT** the Board's motion and **WILL ENTER SUMMARY JUDGMENT** in its favor as to all claims asserted against it.

**DONE** and **ORDERED** this August 5, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE